IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KENNETH A. ROBERTS,

                Petitioner,

v.

DEB McCULLOCH,

                Respondent.

OPINION and ORDER

13-cv-446-jdp[1]

---

Petitioner Kenneth A. Roberts is in custody of the Wisconsin Department of Health Services at the Sand Ridge Secure Treatment Center. He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his continued civil commitment as a "sexually violent person" pursuant to Wis. Stat. ch. 980. Petitioner contends that his continued confinement is in violation of his constitutional right to due process because he was not given a full adversarial hearing to a jury on the question whether he was still a sexually violent person as defined by Wis. Stat. § 980.01(7). From my review of the record and briefs, I conclude that petitioner fails to show that his due process rights were violated by the state courts. Therefore, I must deny the petition for a writ of habeas corpus.

The following facts are drawn from the petition, briefs, and the state court record.

FACTS

Petitioner Kenneth Roberts is confined at the Sand Ridge Secure Treatment Center, located in Mauston, Wisconsin, pursuant to a June 2005 state court judgment and civil

---

[1] This case was reassigned to me pursuant to a May 16, 2014 administrative order. Dkt. 18.

commitment order entered in the Oneida County Circuit Court. In January 2010, Roberts filed a "petition for discharge" pursuant to Wis. Stat. § 980.09. At the times relevant to this action, Wis. Stat. § 980.09(1) stated[2] that a person committed as sexually violent

> may petition the committing court for discharge at any time. The court shall deny the petition under this section without a hearing unless the petition alleges facts from which the court or jury may conclude the person's condition has changed since the date of his or her initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person.

"'Sexually violent person' means a person who has been convicted of a sexually violent offense . . . and who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence." Section 980.01(7). "Likely" means "more likely than not," section 980.01(1m), which means that the person is more than 50 percent likely to commit another sexually violent offense. *State v. Smalley*, 2007 WI App 219, ¶¶ 3, 6, 10, 305 Wis. 2d 709, 741 N.W.2d 286.

In deciding whether to hold a hearing to a jury regarding the person's continued commitment, Wisconsin courts follow a two-step process outlined by § 980.09 and *State v. Arends*, 2010 WI 46, 325 Wis. 2d 1, 784 N.W.2d 513. First, under § 980.09(1)[3] (which the *Arends* court labels "The Sufficiency of the Petition") the court undertakes "a paper review . . . only of the petition and its attachments." *Arends*, 2010 WI 46, ¶¶ 23, 25. This is a "very limited review aimed at ensuring the petition is sufficient--that is, whether relief for the petitioner is possible based on the factual allegations in the petition." *Id.*, ¶ 28. The *Arends*

---

[2] Subsequent to the events of this case, Wis. Stat. ch. 980 was amended in certain respects by 2013 Wis. Act 84.

[3] The version of the statute in effect during the events of this case contained a subsection marked "(2)" but did not include a subsection marked "(1)." Wisconsin courts assumed that this was the result of a scrivener's error and referred to the first, unnumbered section of text as subsection (1). The Wisconsin Legislature later formally amended the statute in a "Correction Bill" to reflect this numbering. 2013 Wis. Act. 168 § 20.

court analogized this standard to "that used in civil cases to decide a motion to dismiss for failure to state a claim upon which relief can be granted under Wis. Stat. § 802.06(2)(a)(6)." *Id.*, ¶ 29.

If the petition passes muster under the first step, pursuant to § 980.09(2) (labeled "The Sufficiency of the Evidence") the court must examine "(1) any current and past re-examination reports or treatment progress reports; (2) relevant facts in the petition and in the State's written response; (3) arguments of counsel; and (4) any supporting documentation provided by the person or the State" in order to "determine whether the documents and arguments before the court contain 'facts from which the court or jury may conclude that the person does not meet the criteria for commitment as a sexually violent person.'" *Arends*, 2010 WI 46, ¶ 37 (quoting § 980.09(2)). This standard "is similar to that used in a civil action to decide a motion to dismiss at the close of evidence under Wis. Stat. § 805.14(4)." *Arends*, 2010 WI 46, ¶ 42.

In his January 2010 petition for discharge, petitioner argued that "[i]f he were evaluated under the new scoring methods using both the Static 99 and the Static 2002 [diagnostic instruments for gauging the likelihood of recidivism] and re-diagnosed, he would no longer be eligible for commitment," because these instruments would show that his risk of recidivism was low. He also argued that he was now at an age (53) at which the risk for sexual recidivism tends to decline.

The petition did not fully explain the factual basis for these arguments, but it appears that the information petitioner provided about the Static-99 scoring method was drawn from an evaluation performed by Dr. William A. Merrick in December 2009 and submitted to the

3

court in February 2010. Merrick's report[4] discussed two diagnostic instruments for gauging a committed person's likelihood of recidivism. Petitioner scored eight out of twelve on the Static-99 instrument, which Merrick categorized as being in the "High Risk range," although he noted that:

> the base rate of detected sexual recidivism has been decreasing . . . [t]herefore, recidivism risk percentages from the Static-99 developmental sample associated with this score probably do not accurately reflect risk of individuals released in more recent decades, and specifically, are likely overestimates of true re-offense rates for people released in more recent years. . . . [Newer statistical] tables suggest that Mr. Roberts's score would correspond to a predicted rate of future sexual recidivism of about 22% within five years, and about 32% within ten years.

Under a second measure, the "Rapid Risk Assessment for Sexual Offense Recidivism," petitioner received a score of four out of six, which represented "high risk," although Merrick noted that because "the base rate of detected sexual recidivism is decreasing," the test "likely overestimate[d] . . . true re-offense rates for people released in more recent years." Despite his caveats about newer data suggesting that recidivism rates have decreased in recent years, Merrick concluded that petitioner's "scores on both of the actuarial instruments suggest that his risk of sexual recidivism is in the High Risk range."

Additionally, Merrick concluded that petitioner failed to show improvement in several "dynamic risk factors," including a failure to submit to therapy that might be used to determine whether his clinical diagnoses had changed, a failure to make progress in correcting "distorted attitudes," and a failure to complete treatment. Merrick noted that petitioner's advanced age might usually be considered a factor associated with reduced risk but concluded that because petitioner's sex offense occurred when he was already 47 years old, "in

---

[4] Neither party provides Merrick's full report but they do not dispute the relevant language quoted in the parties' briefs or the state court opinions.

4

[petitioner's] case, his risk of future violent sexual offending is not lowered to any substantive degree by this factor." Merrick's ultimate conclusion was that petitioner remained more likely than not to commit another sexually violent offense if discharged and was therefore not a proper subject for discharge.

    The circuit court held a hearing on the petition for discharge on August 5, 2010. The court noted that it had not yet performed an initial review of the petition to determine whether petitioner had made "a prima facie case to come into court in the first place" and stated that petitioner did not present expert testimony supporting the petition's claims about the revised scoring methods. Neither counsel for petitioner, opposing counsel, nor the court mentioned Merrick's findings. Counsel for petitioner argued that she believed that the petition "state[d] enough to think that . . . if the court found in a light most favorable to the defendant that there's enough data there." The court dismissed the petition, concluding that the allegations failed under the first part of the *Arends* two-step process because they showed only that the assessment methodology had changed, not that petitioner's condition or risk to reoffend had changed. The court also concluded that even if petitioner's allegations were sufficient, he would not meet the second part of the *Arends* test because he failed to offer any expert testimony in his favor.

    On appeal, petitioner argued that his petition, along with Dr. Merrick's report, supplied sufficient facts from which a reasonable factfinder could conclude that (1) it was not likely that petitioner would commit a further act of sexual violence; and (2) the circuit court erroneously required petitioner to allege that his condition had changed. In an October 11, 2012 decision, the Wisconsin Court of Appeals affirmed the circuit court's decision. The court of appeals "note[d] some confusion" over whether Dr. Merrick's report should be

5

considered part of the petition for purposes of the first *Arends* step, but sidestepped that question by assuming without deciding that the petition was sufficient. The court concluded that the petition was appropriately dismissed because petitioner failed under the second *Arends* step, stating as follows:

> Although the allegations in Roberts' petition might be read, when viewed in isolation and without reference to Dr. Merrick's report, to suggest that Roberts has only a twenty-two percent risk to reoffend over his lifetime, it is clear, when the petition is considered with Dr. Merrick's report, as is appropriate under step two, that a reasonable fact finder could not reach such a conclusion on this record. More specifically, it is clear that Roberts' petition cites the twenty-two percent figure from the report selectively and imprecisely. As indicated above, the report shows that the twenty-two percent figure in the petition is only in reference to Roberts' risk to reoffend within five years as measured only by the Static-99, isolated from other factors. Similarly, the report makes clear that the thirty-two percent figure is only in reference to Roberts' risk to reoffend within ten years as measured only by the Static-99, isolated from other factors. We recognize that Roberts had reached the relatively advanced age (for purposes here) of fifty-three at the time of the petition. However, this does not change our view of what a fact finder could or could not reasonably conclude from all available information under the step-two analysis, particularly given Dr. Merrick's finding that Roberts' age was not a factor that might lead to reduced risk in Roberts' particular case.
>
> Stated another way, the only reasonable reading of Dr. Merrick's report is that he concluded that Roberts' lifetime recidivism risk exceeds fifty percent, and that the re-scored Static-99 is not, by itself, reliable evidence to the contrary. There is simply no basis on this record, as Roberts now argues, to conclude that Dr. Merrick's report "contains facts from which a reasonable trier of fact could conclude [that] Roberts does not pose the requisite risk to reoffend."

Dkt. 10, Exh. 7, ¶¶ 19-20. The Wisconsin Supreme Court denied petitioner's petition for review on February 11, 2013. Petitioner now seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

OPINION

A. **Procedural Default**

In his habeas petition, petitioner argues that the circuit court violated his constitutional right to "substantive and procedural due process" by denying his petition without a full discharge hearing to a jury. In a November 5, 2013 order, Magistrate Judge Stephen Crocker noted that it appeared that petitioner did not present the state courts with his due process arguments and thus possibly procedurally defaulted[5] these claims. Dkt. 4. However, in briefing the petition, respondent does not argue that petitioner has procedurally defaulted his due process claims, so I will consider the issue waived and not raise it *sua sponte*. *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) ("A petitioner's procedural default . . . is an affirmative defense that the State is obligated to raise and preserve, and consequently one that it can waive.").

B. **Review Under 28 U.S.C. § 2254(d)**

Next, I turn to the merits of petitioner's claim. The federal statute governing petitions for writs of habeas corpus, 28 U.S.C. § 2254, provides for a "highly deferential" standard of review. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotation and citation omitted). Under 28 U.S.C. § 2254(d), a district court may not grant a state prisoner's petition

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

---

[5] When a habeas petitioner fails to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has "procedurally defaulted" that claim. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This provision means that on habeas review, federal courts are usually limited to a deferential review of the reasonableness, rather than the absolute correctness, of a state court decision. *E.g.*, *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). "[H]abeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 786 (interior quotation omitted). For purposes of reviewing the reasonableness of the state court's decision, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. The relevant state-court decision for this court's review is the Wisconsin Court of Appeals' decision. *Stevens v. McBride*, 489 F.3d 883, 902 n.2 (7th Cir. 2007) ("For purposes of our review . . . the operative state-court decision 'is that of the last state court to address the claim on the merits.'") (quoting *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006)).

Petitioner claims that his due process rights were violated by the state court dismissing his discharge petition without a full hearing before a jury. Initially, petitioner states that he is not arguing that the Wisconsin statutory scheme allowing courts to dismiss discharge petitions without a full hearing is unconstitutional on its face; in his brief-in-chief he states that he "is not addressing per se the constitutionality of the statutes themselves." Dkt. 12 at 1. Even if petitioner had brought this argument, he could not succeed.

"Due process calls for such procedural protection as the particular situation demands. . . . The fundamental requirement of due process is a meaningful hearing at a meaningful time." *Toney–El v. Franzen*, 777 F.2d 1224, 1227–28 (7th Cir. 1985) (interior quotations omitted). "[T]he Supreme Court has never held that due process requires the state to afford the committed person an adversarial hearing as part of its periodic review process. So far, it has left it to the states to prescribe specific procedures for continuing evaluation of the committed person's condition." *Gladney v. Watters*, 2004 WL 222073 (W.D. Wis. Feb. 3, 2004) (citing *Addington v. Texas*, 441 U.S. 418, 425 (1979). "Given the open-ended nature of due process, states remain free to fashion the details of their systems of involuntary civil commitment so long as confinement takes place pursuant to proper procedures and evidentiary standards." *Frier v. Watters*, 2007 WL 1227531 (E.D. Wis. Apr. 24, 2007) (citing *Kansas v. Crane*, 534 U.S. 407, 413-14 (2002); *Kansas v. Hendrick*, 521 U.S. 346, 357 (1997).

As for the state courts' application of the statutory scheme, federal habeas corpus relief is not available for errors of state law and federal courts are bound by the state court's interpretations of state law. *Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003). Moreover, even assuming the state courts were in violation of chapter 980 procedures, the mere fact that a procedure exists does not mean that an error in following it violates petitioner's due process rights. *Villanova v. Abrams*, 972 F.2d 792, 798 (7th Cir. 1992). (If a state provides . . . that a person cannot be committed who is not a menace to himself or to others, this creates a "liberty" interest of which the state cannot deprive a person without giving him due process of law. But if it specifies the particular process—one, two, or fifty certificates of dangerousness—to which the committed person is entitled, it creates no additional liberty interest.") Violations of state laws are cognizable only if they resulted in fundamental

9

unfairness and consequently violate a petitioner's constitutional rights. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (habeas relief could be available "if an error of state law could be sufficiently egregious to amount to a denial of equal protection or of due process of law"). None of the arguments that I can glean from petitioner's somewhat unfocused briefs meet this standard.

Petitioner first argues that the circuit court incorrectly applied Wisconsin law by dismissing his petition on the ground that petitioner failed to show that *he* had changed rather than that the *scoring method* used to gauge likelihood of recidivism had changed. *See In re Commitment of Ermers*, 2011 WI App 113, ¶ 34, 336 Wis. 2d 451, 802 N.W.2d 540, ("the phrase 'the person's condition has changed since the date of his or her initial commitment' . . . includes not only a change in the person himself or herself, but also a change in the professional knowledge and research used to evaluate a person's mental disorder or dangerousness, if the change is such that a fact finder could conclude the person does not meet the criteria for a sexually violent person.") Even assuming that the circuit court's misstatement of Wisconsin law could implicate a federal due process right, petitioner overlooks the fact that the court of appeals acknowledged the circuit court's misstatement but affirmed the dismissal of the discharge petition anyway:

> It is also true, as Roberts stresses on appeal, that a petition may be based on a change in the understandings of professionals and the research results used to evaluate the person's mental disorder or dangerousness, "not only [on] a change in the person himself or herself." *See State v. Ermers*, 2011 WI App 113, ¶ 31, 336 Wis. 2d 451, 802 N.W.2d 540. Yet, this general proposition does not undercut Dr. Merrick's more specific conclusions as to Roberts' particular situation, especially given that Roberts acknowledges that Dr. Merrick took into account changes in research results and evaluation tools.

Dkt. 10, Exh. 7, ¶ 22.

10

Petitioner also argues that the courts misapplied the statutory scheme for reviewing discharge petitions because Dr. Merrick's discussion of the changes in Static-99 methodology constituted sufficient evidence to award him a full discharge hearing. Petitioner cites *Jefferson v. Upton*, 560 U.S. 284 (2010) for the proposition that the Supreme Court "identified (8) enumerated exceptions [that may support a habeas court's ruling that] the state court's fact finding is not presumed to be correct" and argues that the circuit court did not develop the facts regarding the Static-99 data or allow petitioner to present more evidence.

To begin with, petitioner's argument is premised on a misapprehension of the law. The *Jefferson* case discussed an earlier version of § 2254 outlining eight ways a habeas petitioner could overcome the presumption that facts found by a state court were correct. See *Jefferson v. Upton*, 560 U.S. at 291 (discussing an older, non-applicable version of § 2254(d)). As stated above, under the current version of § 2254(d), this court cannot grant a habeas petition unless the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In any case, petitioner is not really arguing that the state courts got the *facts* wrong; the contents of Dr. Merrick's report, even as they pertain to the discussion of the Static-99 methodology, are undisputed, and the court of appeals discussed in detail why Dr. Merrick's seemingly positive discussion of the changes to the Static-99 results were not sufficient for a reasonable trier of fact to conclude that petitioner could succeed on his discharge petition. In light of the discussion above that chapter 980 petitioners are not entitled to a full adversarial jury proceeding on the discharge petition, petitioner fails to cite to any authority suggesting that he failed to receive a meaningful review of his petition such that his due process rights were violated. Accordingly, his petition for writ of habeas corpus must be dismissed.

### C. Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, I conclude that petitioner has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists would not otherwise debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED that

1. The petition filed by Kenneth Roberts for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED and this case is DISMISSED with prejudice. The clerk of court is directed to enter judgment for respondent and close this case.

2. A certificate of appealability is DENIED. If petitioner wishes he may seek a certificate from the court of appeals under Fed. R. App. 22.

Entered this 13th day of August, 2014.

BY THE COURT:
/s/

JAMES D. PETERSON
District Judge